```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

MICHAEL BRAHAM,                  :
                                 :
     Plaintiff,                  :
                                 :
V.                               :     CASE NO. 3:08cv1564(DEW)
                                 :
THERESA LANTZ, et al.,           :
                                 :
     Defendants.                 :
```

RULING ON PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION

The plaintiff, Michael Braham, a Connecticut state inmate, brings this action pursuant to 42 U.S.C. § 1983 against various Department of Correction employees. The plaintiff alleges that he was removed him from his job as a teacher's aide in retaliation for filing a grievance. Pending before the court is the plaintiff's "motion for sanctions for spoliation and failure to comply with discovery orders." (Doc. #135.)

I.   Factual Background

From August 2006 to August 2007, the plaintiff was a student in the Small Engine Repair Class at the Cheshire Correctional Institution. (Doc. #32, Am. Compl. ¶9.) He was paid 75¢ a day.

On July 31, 2007 and August 1, 2007, the plaintiff filed a complaint and grievance alleging that correctional officer Manzi, who is not a party to this action, made a racial slur. Defendant grievance coordinator Acas received the grievance on August 13, 2007 and shared it with defendant Deputy Warden Adgers. (Doc. #32, Am. Compl. ¶¶29, 46.)

Meanwhile, in August 2007, upon completion of the class, the instructor of the Small Engine Repair Class, Douglas Sweeney, now deceased, requested that the plaintiff be approved as a teacher's aide. (Doc. #32, Am. Compl. ¶17.) The request required the approval of defendants Counselor Lowe, Unit Manager Esposito, Classification Counselor Senecal and Deputy Warden Adgers. (Doc. #32, Am. Compl. ¶20.)

The plaintiff was approved for the teacher's aide position and worked as a teacher's aide from August 20, 2007 through August 24, 2007.[1] (Am. Compl. ¶31.) His pay changed from the student rate of 75¢ to the teacher's aide rate of $1.25 per day. (Doc. #144, Defs' Oppn at 2.)

On September 4, 2007, the plaintiff was informed that he no longer had the job. (Am. Compl. ¶36.) Plaintiff protested to defendant Lowe that he met all the eligibility requirements and that his removal from the teacher's aide position was in "retaliation for the grievance he had filed regarding CO Manzi." (Am. Compl. ¶37.) On September 5, 2007, the plaintiff submitted an Inmate Request Form to defendant Warden Lee stating that he had been removed from the position in retaliation for filing a grievance against correction officer Manzi. (Doc. #32, Am. Compl. ¶83.) Warden Lee responded "I was informed that your job was not

---

[1]Thereafter, there was a break in the program from August 27, 2007 to September 3, 2007. (Am. Compl. ¶31.)

taken away from you. You were removed after you completed your course. You are now on the list to work in the small engine shop." (Doc. #135, Ex. C, Inmate Request Form.) The plaintiff also submitted an Inmate Request Form to defendant Deputy Warden Adgers complaining of retaliation. (Doc. #135, Ex. B, Inmate Request Form.) Adgers responded that he denied the plaintiff's "request [to be a teacher's aide] for justified reason [sic] in which Officer Manzi had no involvement." (Doc. #135, Ex. B, Inmate Request Form.) The defendants maintain that the plaintiff "was not approved for the position because of his disciplinary history and an investigation of the plaintiff by the Cheshire Intelligence Unit." (Doc. #144, Def's Oppn at 2.) The plaintiff contends that the defendants' claim that they denied his application on the basis of an old disciplinary ticket or an Intelligence Unit investigation is "pretext to cover up their retaliation." (Doc. #135, Pl's Mem. at 3.)

In October 2008, the plaintiff, proceeding pro se, filed this action alleging retaliation in violation of the First Amendment against Counselor Acas, Deputy Warden Adgers, Unit Manager Esposito, Warden Lee, Counselor Lowe and Classification Counselor Senecal. In May 2013, pro bono counsel appeared on behalf of the plaintiff. (Doc. #115.)

In the pending motion, the plaintiff seeks sanctions for spoliation on the grounds that the defendants had a duty to

preserve certain records but failed to do so. (Doc. #135.) The plaintiff argues that the defendants should be sanctioned for failing to preserve and produce three documents requested during discovery: (1) the Job Request Form, (2) the Inmate Pay Plan form and (3) an Intelligence Unit file concerning an investigation of the plaintiff in 2007.[2] (Doc. #135 at 4.) As relief, the plaintiff seeks entry of default judgment. In the alternative, the plaintiff requests that the court (1) "preclude[] the defendants from offering evidence of an alleged denial of plaintiff's application to be a teacher's aide; (2) instruct[] the jury that an adverse inference may be drawn against the defendants on the basis of their destruction of evidence; (3) award[] the plaintiff his costs and attorneys' fees, and (4) award[] any other relief as the Court deems just and proper."  (Doc. #135 at 2.)

II.  Legal Standard for Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber, Co., 167 F.3d 776, 779 (2d Cir. 1999). See Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, 685 F. Supp.2d 456, 466 (S.D.N.Y. 2010)

---

[2] In addition to these three documents, the plaintiff contends that the defendants spoliated emails. This issue is the subject of further discovery (see doc. #157) and will be addressed in a separate opinion.

4

("breach of the duty to preserve, and the resulting spoliation of evidence, may result in the imposition of sanctions by a court").

"It is not enough for the innocent party to show that the destroyed evidence would have been responsive to a document request." Id. at 467. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). Sanctions for the spoliation of evidence

> should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'

West v. Goodyear Tire & Rubber, Co., 167 F.3d 776, 779 (2d Cir. 1999). "[T]he severity of the sanctions imposed should be congruent with the destroyer's degree of culpability." Richard

Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 288 (S.D.N.Y. 2009).

III. Discussion

The plaintiff seeks spoliation sanctions regarding the Job Request Form, the Inmate Pay Plan form and the Intelligence Unit file.

A. Job Request Form

The plaintiff submitted the Job Request Form seeking approval to work as a teacher's aide. Defendants Counselor Lowe, Unit Manager Esposito, Classification Counselor Senecal and Deputy Warden Adgers completed the form. The completed form would show whether each approved or denied the plaintiff's request to work as a teacher's aide and would give their "review recommendations."[3] The plaintiff contends that the form "would have conclusively established that [he] was approved by the defendants for the very job for which they now claim he was unsuitable and not approved." (Doc. #135 at 25.) The defendants do not agree. It is undisputed, however, that the Job Request Form was completed for the teacher's aide position and the defendants are unable to locate it. (Doc.

---

[3] A completed form should include, inter alia, the inmate's escape score, discipline history, aggravating/mitigating factors and the recommendation and date of each of the four levels of approval. During discovery, the defendants produced (1) the plaintiff's original Job Request Form dated August 1, 2006, which showed that he was approved to participate as a student in the small engine repair class and (2) a blank form. (Doc. #135, Ex. F.)

6

#144 at 2, 4.)

Defendant Lowe testified in his deposition that he recommended approval of the request for the plaintiff to be a teacher's aide. After that, the form was routed to defendants Unit Manager Esposito, Classification Counselor Senecal and Deputy Warden Adgers. When the form came back to Lowe, he saw that Classification Counselor Senecal and Deputy Warden Adgers had not approved the plaintiff's request to be a teacher's aide. (Doc. #135, Ex. E, Lowe Dep. at 63-64.) Defendant Lowe does not remember if he filed the completed form in the plaintiff's master file or gave it to a secretary. (Doc. #135, Ex. E, Lowe Dep. at 74, 76.) He later looked for the form in the plaintiff's master file but could not find it. (Doc. #135, Ex. E, Lowe Dep. at 71, 73, 74.) No one instructed Lowe to take any steps to preserve the document. (Doc. #135, Ex. E, Lowe Dep. at 73.) He testified that he "was not in the habit of . . . preserv[ing] a document for something like a job assignment." (Doc. #135, Ex. E, Lowe Dep. at 74.)

Classification Counselor Senecal's testimony differed from Counselor Lowe's. Senecal said that the job request form would not normally be kept in an inmate's master file. (Doc. #144, Ex. E, Senecal Dep. at 8.) According to Senecal, it might be kept "with the secretary" and either Counselor Lowe or Unit Manager Esposito would keep a copy. (Doc. #144, Ex. E, Senecal Dep. at 8-9.) Senecal was not responsible for maintaining it. (Doc. #144, Ex. E,

Senecal Dep. at 8.)

B.  Inmate Pay Plan Form

The next document at issue is the Inmate Pay Plan Form. According to defendant Warden Lee, before an inmate's pay can be altered, the deputy warden must complete and approve an "inmate pay plan form." (Doc. #135, Ex. E, Lee Dep. at 117.) The document would be sent to the "Central Office." (Id.) The plaintiff maintains that the Inmate Pay Plan form would be "highly relevant" because it would establish that he had been approved for the teacher's aide position[4] and contradict defendant Lowe's testimony that Mr. Sweeney, the instructor of the small engine class, changed the plaintiff's pay without approval. (Doc. #135, Ex. E, Lowe Dep. at 68-69.)

C.  Any Intelligence Unit file concerning an investigation of plaintiff during 2007

The third document for which the plaintiff seeks sanctions is a 2007 Intelligence Unit investigation file. As indicated earlier, the defendants allege that the plaintiff was not approved for the teacher's aide job because of, inter alia, "an ongoing investigation of the plaintiff by [the] Cheshire Intelligence Unit." (Doc. #144, Defs' Oppn at 2.) The defendants, however, produced no documents or files from the Intelligence Unit showing an investigation of the plaintiff during the relevant time frame.

---

[4]As previously indicated, the defendants concede that the plaintiff's pay was changed to that of a teacher's aide.

(Doc. #135 at 4.)  The defendants have declined to stipulate that there never was such a file.  The plaintiff contends that "[g]iven that an alleged investigation by [Intelligence Unit] appears to be a reason being offered by defendants for [plaintiff's] removal from his teacher's aide job, the defendants should have preserved and produced an [Intelligence Unit] file or, alternatively, stipulated that no such file existed."  (Doc. #135 at 4.)

The record reveals the following:  Nonparty Captain Harlow, a supervisor in the Intelligence Unit during the relevant time period, testified that the Intelligence Unit did not maintain files on every inmate.  (Doc. #144, Ex. D, Harlow Dep. at 65.)  Deputy Warden Sienkiewicz, who oversaw the Intelligence Unit, testified in her deposition that she did not recall any investigations of the plaintiff.  (Doc. #153, Sienkiewicz Dep. at 10.)  Lieutenant Smith, who also worked in the Intelligence Unit, testified that he was not aware of any formal investigation of the plaintiff.  (Doc. #153, Smith Dep. at 32, 33).

D.  Application of <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>

The plaintiff argues that he satisfies the three part test in <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002), to obtain an adverse instruction regarding the Job Request Form, the Inmate Pay Plan form and the Intelligence Unit file because (1) the defendants had an obligation to preserve the documents; (2) the defendants were grossly negligent (or at least

negligent) in losing or destroying the documents, and (3) the documents are relevant to the plaintiff's claim. (Doc. #135, Pl's Mem. at 17-20.)

As to the first prong of <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002) - "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed" - the plaintiff argues that the defendants "had an obligation to preserve the document[s]" but "breached this obligation because no timely litigation hold was ever issued or honored nor did the defendants otherwise take appropriate measures to preserve evidence." (Doc. #135 at 19.)

Addressing the Job Request Form first, the plaintiff contends that under the DOC's retention policy, documents in an inmate's master file "should have been maintained" and that "[s]omeone wrongfully lost or destroyed these files and it is reasonable to infer that one or more of the defendants (or those acting in concert with them) were the ones who have done so." (Doc. #147 at 2.) The plaintiff further states that defendants Lowe and Senecal "handled" the Job Request Form and "all of the defendants had access to the Inmate Master file where it was kept." (Doc. #147 at 4.)

The defendants dispute that they had control over the Job Request Form and the concomitant responsibility of preservation required for spoliation sanctions. That the document passed

10

through someone's hands, they argue, does not necessarily mean that they have control over it to the extent required to show spoliation. They point out that the DOC is responsible for record retention and has a document retention policy.[5] (Doc. #144 at 5.) But the DOC is not a defendant; the defendants are six current and former employees sued in their individual capacities. Some had no involvement with the Job Request Form. None had responsibility for the DOC's record retention policy. (Doc. #144 at 5; doc. #158 at 130, "None of the defendants is a custodian of the records.") They were not instructed to hold or preserve any documents. They reasonably relied on the DOC and "should not be held personally responsible" for their employer's failure to preserve documents. (Doc. #144 at 5-6.)

The evidence regarding the Job Request Form is scant. It appears to have been signed by Counselor Lowe, Unit Manager Esposito, Classification Counselor Senecal and Deputy Warden Adgers and returned to defendant Lowe. It is unclear what happened to the form after that. It also is unclear where the form should be maintained in the normal course of business and whose responsibility it is to maintain it. The evidence does not demonstrate that the parties against whom an adverse inference and sanctions are sought had a duty or role with respect to the

---

[5] Defense counsel did not issue a written litigation hold letter to the DOC. (Doc. #158 at 82.)

maintenance or destruction of the evidence at issue.

Judge Arterton addressed a similar scenario in Grant v. Salius, No. 3:09cv21, 2011 WL 5826041 (D. Conn. Nov. 18, 2011). The plaintiff in Grant alleged that an inmate attacked him and the defendants, three corrections officers, failed to protect him. Plaintiff served a production request for the video. When the video was not produced, the plaintiff claimed spoliation and sought sanctions. After setting forth the Residential Funding standard, the court observed that "[t]he rationale behind the adverse inference instruction sanction is aimed at 'a party's destruction of evidence which it has reason to believe may be used against it in litigation.'" 2011 WL 5826041, at *2 (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). The court also noted that the "threefold purpose behind this sanction [of] (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." Id. (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001)). The court concluded

> [t]hat the first and second of these purposes are aimed at a party that both has the ability to destroy the evidence at issue and is responsible for the destruction, suggests that this sanction is inapplicable to these Defendants as [plaintiff] has not shown that [the three individual] Defendants had any control over the

recordings, any duty to maintain them, or were in any way involved in the failure to preserve them. . . .

In light of the Second Circuit's focus in applying spoliation sanctions on parties with a duty to preserve evidence and a role in the destruction of that evidence, the Court is persuaded . . . that spoliation sanctions, particularly an adverse inference instruction, are unwarranted where the party against whom sanctions are sought has not been shown to have had any responsibilities related to the maintenance, preservation, or destruction of the evidence at issue, and the loss of that evidence is instead attributable to non-parties. Here, [plaintiff] has not shown that [the] Defendants . . . had any role with respect to the maintenance or participated in the destruction of the video footage in question. He therefore is not entitled to spoliation sanctions.

2011 WL 5826041, at *2-3.[6]

Similarly, the Sixth Circuit in Adkins v. Wolever, 692 F.3d 499 (6th Cir. 2012), also a prisoner case, determined that the district court did not err in denying the plaintiff's request for an adverse inference as to the destruction of video footage. In that case, the defendant correction officer had no access to or control over the video and reasonably would have expected the prison's retention policy to cover the item. Id. at 502. On appeal, the plaintiff argued that the "'failure to impose a spoliation sanction against [defendant] opens the door for [the

---

[6] Although the court in Grant denied the plaintiff's request for an adverse inference instruction, the court permitted the plaintiff "at trial to offer admissible evidence that the Defendants were aware of the likely existence of the video footage at the time and location of the attack and could have requested that it be preserved after being made aware of [plaintiff's] grievances, but declined to do so." Grant, 2011 WL 5826041, at *3.

prison] and other prisons to destroy evidence in all prisoner rights cases' because the prison itself is not subject to suit under the Eleventh Amendment, thus it would have an incentive to destroy evidence that is damaging to its employee's case." 692 F.3d at 506. The Sixth Circuit acknowledged the plaintiff's concern - which the plaintiff in this case also raises - but reasoned that

> to hold that all defendants in situations like [defendant's] must take affirmative steps to ensure that their employing prison continues to maintain evidentiary records for every incident with a prisoner would impose an added burden on prison employees. . . . [T]o impose a rule to cover every such situation would unnecessarily interrupt a prison administrators' judgment as to how to operate their prisons and force prison employees to constantly second-guess their employer's ability to maintain potential evidence for possible litigation. That is not a burden we are willing to impose.

692 F.3d at 506. The Sixth Circuit went to conclude that "[t]he more prudent path . . . is to consider incidences raising spoliation questions on a case-by-case basis, considering the purposes of a spoliation sanction and the factors for determining whether one should be imposed." Id. at 507. See Field Day v. County of Suffolk, No. 04-2202, 2010 WL 1286622 at *13 (E.D.N.Y. Mar. 25, 2010) (spoliation sanctions, including an adverse inference instruction, were unwarranted against individual defendants because "[a]ny spoliation" was "attributable solely to the County" and the plaintiffs did not show that the individual defendants actually spoliated any evidence); Parlin v. Cumberland County, No. 08-cv-186-P-S, 2009 WL 2998963, at *2 (D. Me. Sept. 16,

14

2009) (denying plaintiff's motion for adverse inference against individual defendants where the County, which was no longer a defendant, destroyed videotape because there was "nothing in the record indicating that [the two individual defendants] were involved in the destruction of the videotape" and "[i]t would be inequitable to sanction a blameless party for another's spoliation of evidence.")[7]

Here, the plaintiff does not show that the defendants had control over the Job Request Form and an obligation to preserve it. See Grant v. Salius, No. 3:09cv21(JBA), 2011 WL 5826041, at *3 (D. Conn. Nov. 18, 2011). The plaintiff's motion for spoliation sanctions as to the Job Request Form is therefore denied.

The court similarly finds that no spoliation sanctions should be imposed against the defendants as to the Inmate Pay Plan form and the Intelligence Unit file. The plaintiff has not demonstrated spoliation as to these documents. There is no evidence that any of the defendants ever saw either of these documents. See Farella v. City of New York, Nos. 05 Civ. 5711 & 05 Civ. 8264, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) ("[F]or sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed."), aff'd,

---

[7] The Parlin court denied the plaintiff's motion for sanctions without prejudice, allowing the plaintiff to "re-raise the issue" of whether a spoliation inference was warranted based on the evidence at trial. 2009 WL 2998963, at *2.

323 Fed. Appx. 13 (2d Cir. 2009). The record is bereft of evidence that an Intelligence Unit file on the plaintiff in 2007 actually existed. The absence of a file from the Intelligence Unit regarding an investigation of the plaintiff in 2007 certainly provides grist for cross-examination. However, on this record, the plaintiff has not established spoliation.[8]

Finally, the court would be remiss if it failed to remark on the defendants' discovery conduct. "[T]he courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party." Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, 685 F. Supp.2d 456, 461 (S.D.N.Y. 2010). See The Sedona Conference Commentary on Legal Holds: The Trigger and the Process, 11 Sedona Conf. J. 265, 269) (Fall 2010)(guidelines concerning preservation obligations and legal holds); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)(Zubulake IV)(Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a "litigation hold" to ensure the preservation of relevant documents.). This motion arose because the DOC and its counsel

---

[8] Because spoliation has not been established, the court cannot grant the plaintiffs' alternate requests for "other" spoliation sanctions that might be available.

were less than diligent in their efforts to preserve relevant evidence in this case. They would do well to review their procedures and policies concerning preservation.

D.   Conclusion

For these reasons, the plaintiff's motion (doc. #135) is denied.

SO ORDERED at Hartford, Connecticut this 26th day of March, 2014.

```
            /s/
     Donna F. Martinez
     United States Magistrate Judge
```